IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Civil No. 21-398 |
| | ) |
| DAJOUR NAYLOR | ) |

### Opinion on Objection

On November 17, 2023, Defendant Dajour Naylor pleaded guilty to a single count of possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The Probation Office has conducted a presentence investigation and submitted a presentence investigation report. ECF No. 65. Both parties have been given the opportunity to file objections and position papers as required by Local Criminal Rule 32.C.4. Mr. Naylor, through his counsel Linda Cohn, has filed a Position with Respect to Sentencing Factors in which he Objects to the application of a 4-level enhancement to the base offense level pursuant to USSG §2K2.1(b)(6)(B). ECF No. 69.[1] The Probation Office applied the four-level increase based on Mr. Naylor's conduct showing that he possessed the ammunition at Count One of the Indictment "in connection with another felony offense." PSIR, at ¶ 17. The government sets forth its opposition to the Objection in its Sentencing Memorandum. ECF No. 75. The Probation Office has submitted an addendum to the presentence report pursuant to Local Criminal Rule 32.C.6, stating its position that the enhancement is properly applied. ECF No. 73. An evidentiary hearing on Mr. Naylor's Objection was held on January 30, 2024. For the following reasons, the Objection will be overruled.

---

[1] Mr. Naylor also submitted several video Exhibits in support of his Objection. ECF No. 70.

I.     **Objection to Use or Possession of Ammunition in Connection with Another Felony Offense**

Mr. Naylor objects to paragraph 17 of the Presentence Report, which applies a 4-level enhancement to the base offense level pursuant to §2K2.1(b)(6)(B).[2] Section 2K2.1(b)(6)(B) states, in relevant part, as follows:

> (6) If the defendant—
>
> > (B) used or possessed any firearm or ammunition in connection with another felony offense; . . . , increase by 4 levels.

§2K2.1(b)(6)(B). The Presentence Report explains the Offense Conduct underlying application of the enhancement as follows:

> 9.    On April 9, 2021, the Warden/ShotSpotter system in McKeesport reported multiple shots fired near the 47 Building of Crawford Village. Video surveillance of the housing complex showed muzzle flashes of shots being fired from a street just behind the 47 Building in the direction of the 42 and 43 Buildings. The front sides of the 42, 43, and 47 buildings in the Crawford Village Housing Complex all face the same parking cul-de-sac and are in relatively close proximity to each other. The 42 and 43 buildings are on one side of the parking area, and the 46 and 47 buildings are on the other, forming a type of quadrangle. Surveillance footage also showed Dajour NAYLOR running back and forth in front of the 43 Building with a firearm in one hand, then taking cover behind a parked van and returning fire in the direction of the 47 Building. A total of 5 spent shell casings were found in the very location from which NAYLOR was seen shooting. This GECO 9mm Luger caliber ammunition was not manufactured in Pennsylvania.
>
> 10.   Within minutes of the ShotSpotter notification, McKeesport Police were on scene and stopped a tan-colored Mercury leaving the area of the 47 Building with a bullet hole in its rear driver's side door. NAYLOR was driving the Mercury. He was detained and surveillance video from inside the McKeesport Police station shows him wearing the same clothing as the individual seen firing a gun in front of the 43 Building. The firearm was not recovered.

PSIR at ¶¶ 9-10. The Probation Officer's justification for applying the 4-level enhancement is stated in paragraph 17 as follows: Mr. Naylor "possessed the ammunition at Count 1 of the

---

[2] Mr. Naylor also objects to paragraphs 21, 25, and 69, as said paragraphs assume that the 4-level enhancement of paragraph 17 applies.

Indictment in connection with another felony offense, specifically Aggravated Assault[3], Simple Assault[4], Recklessly Endangering Another Person[5], and/or Attempted Discharge of a Weapon Into an Occupied Structure[6] as set forth under Pennsylvania law." PSIR, at ¶ 17.

Mr. Naylor argues that the enhancement does not apply, because he was acting in self-defense when he fired shots. He also argues that the enhancement does not apply, because the government is unable to establish that each of the elements of the proposed felony offenses have been met. The government argues that all four stated felonies are established by Mr. Naylor's conduct; and further, that Mr. Naylor is unable to state a self-defense justification.

Local Criminal Rule 32.10, which is modeled on U.S.S.G. §6A1.3(a), states, "[w]hen any fact or factor material to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to introduce evidence and to present information to the Court regarding that fact or factor, in accordance with § 6A1.3(a) of the U.S.S.G." LCrR 32.10. Section 6A1.3(a) also directs that, "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." § 6A1.3(a). The Sentencing Commission, as well as Courts, agree that the "use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." USSG §6A1.3(a), comment.

---

[3] 18 Pa. Cons. Stat. §§ 2702(a)(1), (a)(4),
[4] 18 Pa. Cons. Stat. § 2701(a)(1).
[5] 18 Pa. Cons. Stat. § 2705.
[6] 18 Pa. Cons. Stat. § 2707.1.

An evidentiary hearing was held on January 30, 2024, at which time the Court heard testimony from Agent Ryan Rennig of the Bureau of Alcohol, Tobacco, Firearms, and Explosives and from Bianca D'Auria an Investigator with the Federal Public Defender's office. ECF No. 78. The parties introduced video evidence from several different locations at the Crawford Village housing complex, documenting the April 9, 2021 event at issue. Photographic and demonstrative evidence, depicting the location of the events, was also introduced to assist in explaining the relevant April 9, 2021 events. Finally, the defense introduced statements from two persons who were present at the time when the gunshots were fired.

## II.     Discussion

### a.  "In Connection with Another Felony Offense"

Before considering whether Mr. Naylor has properly asserted a self-defense justification, there must first be a "felony offense" that he committed "in connection" with his firings of the gun on April 9, 2021 outside the housing complex. The Probation Officer proposed four Pennsylvania offenses that Mr. Naylor committed: Aggravated Assault, Simple Assault, Recklessly Endangering Another Person ,and Attempted Discharge of a Weapon Into an Occupied Structure. The government argues that the elements of all four offenses have been established. Without commenting on the other three potential offenses, the Court finds that the offense of Recklessly Endangering Another Person, a violation of 18 Pa. Cons. Stat. § 2705, is established. Section 2705 states:

> **§ 2705. Recklessly endangering another person.**
>
> A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa. Cons. Stat. § 2705. Mr. Naylor fired several gunshots in the general direction of the location where the initial gunshots came from. He then ran across the parking lot, shooting in

the air as he ran. Finally, he moved to another part of the housing complex's parking lot, and, from behind a parked vehicle, he fired one more shot aimed towards the general direction of the initial shots. Surveillance videos show that other residents and visitors were outside and in the parking lot at the time when Mr. Naylor fired shots. Mr. Naylor's conduct of firing multiple shots when numerous people were present at the housing complex and in the parking lot area satisfies the elements of recklessly endangering another person. The defense, however, points out that the shots were fired in the direction of the hill, and that the firearm was pointed in the air. The defense further argues that Mr. Naylor's shots were not pointed towards any identified person. Def. Memo at 4, 6. Nonetheless, under Pennsylvania law, as set forth below, Mr. Naylor committed the offense of recklessly endangering another person.

In *Commonwealth v. Hartzell*, the defendant had "fired into the creek near the bridge, approximately 25 to 30 feet *away from the men's location* on the bridge. Although [defendant] may not have pointed the weapon directly at the two men, it was *pointed in their general direction.*" *Commonwealth v. Hartzell*, 988 A.2d 141, 143 (Pa. Super. Ct. 2009) (emphasis added). The *Hartzell* Court cited two Pennsylvania cases where convictions for recklessly endangering another person were upheld even though the defendant did not fire a gun.[7] The Superior Court then stated that, "it is not difficult to conclude that the actual discharging of a weapon numerous times in the vicinity of others constitutes a sufficient danger to satisfy the REAP statute." *Id.* at 144.

Similarly, in *Commonwealth v. Brockington*, the defendant's reckless endangerment conviction was upheld where she fired a single warning shot up into the air outside her residence.

---

[7] In one example, the defendant had pointed a loaded gun, and in the other the defendant had brandished an unloaded gun during the commission of a crime. *Commonwealth v. Hartzell*, 988 A.2d 141, 144 (Pa. Super. Ct. 2009) (citing *Commonwealth v. Reynolds*, 835 A.2d 720 (Pa. Super. Ct. 2003) and *Commonwealth v. Hopkins*, 747 A.2d 910 (Pa. Super. Ct. 2000).).

*Commonwealth v. Brockington*, 230 A.3d 1209, 1215–16 (Pa. Super. Ct. 2020). The Superior Court stated that "it is 'hardly inconceivable" that the falling bullet from Appellant's gun would have struck [her neighbor], anyone else who had ventured outside to determine the source of the noise, or indeed any other nearby Philadelphian who happened to be outside at that time." *Id.* at 1216. The Court also positively cited the Supreme Court of Illinois's decision in *People v. Collins*, 824 N.E.2d 262, 268 (2005), for the proposition that, "'[t]he inherent danger caused by the reckless discharge of a firearm into the air, and the obvious ricochet effect that may occur when bullets fall to the ground, are matters of common sense.'" *Id.*

In upholding a conviction for reckless endangerment, the Court in *Commonwealth v. Shaw*, found that that by discharging a firearm over his head into the air, Shaw created a risk of causing serious bodily injury, even though he did not directly aim the firearm at the intended victim. 203 A.3d 281, 285 (Pa. Super. Ct. 2019) (relying on the Trial Court Opinion, which also cited the reasoning in *Hartzell*). *See also Commonwealth v. Ivie*, 296 A.3d 575, *5 (Pa. Super. Ct. 2023) (by firing semi-automatic weapon in direction of victims' residence, defendant recklessly disregarded the risk that the bullet could have struck someone inside the residence) (Non-precedential Opinion cited for its persuasive value pursuant to Pennsylvania Superior Court Internal Operating Procedure 65.37(b) and 210 Pa. Code Rule 126(b)).

Here, multiple video views show Mr. Naylor firing a gun several times in the presence of the other people outside of the housing complex, and they also show Mr. Naylor choosing to run to the other side of the parking lot and firing the gun yet again. In light of the above Pennsylvania precedent, Mr. Naylor's conduct sufficiently establishes the crime of recklessly endangering another person. Thus, the 4-level enhancement applies, unless Mr. Naylor's conduct was justified, because he was acting in self-defense under Pennsylvania law.

### b. Self-defense Justification

The use force in self-defense is governed by 18 U.S.C. § 505, which states in relevant part as follows:

> **§ 505. Use of force in self-protection**
>
> (a) Use of force justifiable for protection of the person.—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> (b) Limitations on justifying necessity for use of force.—
>
> > \* \* \*
>
> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death [or] serious bodily injury. . . ; nor is it justifiable if:
>
> > (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
> >
> > (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating.

18 Pa. Cons. Stat. § 505(a) & (b).  The Pennsylvania Supreme Court has summarized the elements to establish the justified use of force as follows:

> a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Harris*, 665 A.2d 1172, 1174 (Pa. 1995).

As an initial matter, Mr. Naylor argues that the shooters aimed their gunfire at him specifically.  He argues that the intent to shoot Mr. Naylor is shown, in part, by the bullet hole in his rear driver's side door, which he states happened while he was standing next to his car.  While not definitive, the video evidence introduced at the hearing, along with Agent Rennig's testimony, that it was unlikely that the bullet hole was caused from gunshots fired on April 9,

2021, weigh heavily in favor of concluding that the bullet hole in the rear driver's side door occurred prior to April 9, 2021. However, assuming that the gunshots were specifically aimed at Mr. Naylor, and that one of the bullets hit his car, such evidence merely contributes to a finding that the self-defense claim would be "'properly at issue . . . before the fact finder.'"[8] *Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. Ct. 2014) (quoting *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001)). Once Mr. Naylor "properly raises 'self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense.'" *Smith*, 97 A.3d at 787 (quoting *Commonwealth v. McClendon*, 874 A.2d 1223, 1229–30 (Pa. Super. Ct. 2005)).

Considering the parties' briefs, the evidence introduced at the hearing, and the arguments of counsel, the Court finds that the government has proven that Mr. Naylor's conduct does not meet the elements of justifiable self-defense. First, Mr. Naylor may "have reasonably believed that he was in imminent danger of death or serious bodily injury," when the gunshots were first fired, but the totality of the circumstances do not show that he was justified in believing "that there was a necessity to use such [deadly] force in order to save himself or others." *Harris*, 665 A.2d at 1174. The gunshots originated from outside the housing complex, and at such a distance and in poor lighting such that the shooters were not visible to the people in the parking lot. The people in the parking lot, including Mr. Naylor, reacted to the gunshots in several ways: by dropping to the ground, seeking cover, running away from the shots, or by seeking shelter inside a residence. Only Mr. Naylor rose from the ground and fired gunshots in the general direction

---

[8] Mr. Naylor has no burden to prove his self-defense claim, but before the defense is considered, "there must be some evidence, from whatever source to justify a finding of self-defense. . . . then the issue is properly before the fact finder." *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001)

from where the shots originated. Given the distance the shooters were from the parking lot, Mr. Naylor's decision to shoot his firearm in the general direction from where the shots originated, and then to run through the parking lot firing his gun again, does not demonstrate a necessity to use deadly force in order to save himself or others.

The self-defense justification also does not apply here, because Mr. Naylor had a duty to retreat to avoid the danger, which he failed to do. As stated, every other person at the housing complex and who was outside when the shots were fired, decided to retreat in one way or another. Only Mr. Naylor chose to return fire. Thus, Mr. Naylor's gunshots were not firing justified because he knew that he could have avoided "the necessity of using such force with complete safety by retreating." 18 Pa. Cons. Stat. § 505(b)(2)(ii).

### III. Conclusion

The Court finds that Mr. Naylor's use of ammunition was in connection with another felony offense and that a self-defense justification does not apply. Therefore, the 4-level enhancement to the base offense level pursuant to §2K2.1(b)(6)(B) was properly applied. Accordingly, Mr. Naylor's Objection is overruled. Thus, Mr. Naylor's sentencing guideline range, based upon an offense level of 15 and a criminal history category of III, is 24 to 30 months.

SO ORDERED, this 14th day of February 2024.

Marilyn J. Horan
United States District Judge